Good morning, Your Honors. May it please the Court. My name is Linda Cosme and I represent Thomas Rolston. And with the Court's permission, I would like to reserve three minutes for rebuttal. Officer, you have to keep track of your own time. Would you move the microphone just a little closer so we can hear you? Thank you. I will focus my attention on an issue of law that, if resolved, could eliminate the need to consider the other points of contention. Although we don't waive them, we feel there's one particular issue, and that issue is whether the district court erred in its application of a medical improvement review standard when it sees benefits for Rolston. Counsel, I want you to get to that issue because you want to, and it's obviously central to your argument. But there's another point in this case that's of concern to me, and I'd appreciate it if both counsel would respond to it. It appeared to me that the date selected for the onset of disability, or rather the date of medical improvement, October 30, 2003, was just picked out of the air. I read all of the medical reports, and I couldn't see that date mentioned either explicitly or implicitly by any of the doctors. Is there support for that date? If so, where, and if not, what effect does that have on our analysis of the remainder of the case? Your Honor, I agree with you 100% absolutely. The date was arbitrary. It could have been November 1st. It could have been November 2nd. The administrative law judge does not tie that date in to a particular piece of evidence. For example, an MRI, a CT scan, maybe an office visit. The day actually gets pulled out of nowhere. That's one of Ralston's contentions is this. I'm sorry, go ahead. I was going to say, what did the district court say when you raised that issue? The district court was satisfied with the commissioner's analysis. Did you raise the issue before the district court? I did, Your Honor. Oh, did you? Okay. And where do we find what you argued before the district court? Where in the record? Where did I raise it in the record? I'd like to see the colloquy between you and the district court when you raised this issue before the district court, and I haven't been able to find it, and I thought maybe it didn't happen, but now you advise me it did. So I thought maybe you could give me that page. Your Honor, please forgive me. I don't have the exact page with me. You don't have your materials with you? You have them here in the court. Yes, I do have my materials with me. Okay. Well, why don't you just tell me that in your rebuttal time then? Well, hypothetically, let's just presume that I didn't address it in the opening brief. Let's just go out on the presumption. What you're also saying is if you've got the reference in the record, why don't you either bring it on rebuttal or let the clerk know afterwards and she can get to it. I will bring it on rebuttal. It will take me a few minutes to pull that out for you, sir. I think Judge Graber had some follow-up questions. Well, my follow-up question is, assuming that you raised it properly, but that there's no support in the record for the October 30th date, what effect does that have on our analysis? Would we have to just send the case back for further analysis as to what the date might have been? Well, it's my contention that because he was awarded a period of disability, he was found disabled. At this point, he becomes a beneficiary. He established that he was disabled. And hypothetically speaking, it could be he was disabled much longer than October 30th. We don't know. The ALJ doesn't really provide any legitimate basis for that particular day. And I would suggest to this Court that a proper recommendation might be a remand, a continuation of benefits and remand for a continuing disability review and analysis of at what point, the comparison point, at what point did Volson's condition change substantially? How much difference does that make in this case? It's the difference between a continuation of benefits. So it's a substantial difference. Yes. Pivotal. Let me just, this won't totally respond, I guess, to Judge Wallace's contention, but in the district court's opinion at ER 357, the court does say that it believed there's evidence in the record from which the ALJ could conclude that plaintiff's condition improved after October 30th, 2003. And he cites Dr. Geller's treatment notes. Now, I don't know whether he's referring there to the specific date or to the question of improvement. What is your interpretation of that? The ALJ is not very clear because on April 26, 2004, which is several months past the close period time, Dr. Geller finds that he is still disabled. Right. No, I understand you're saying there's not substantial evidence. I'm trying to figure out what the district court means in that paragraph, in your opinion. Your Honor, the district court's opinion was confusing. There were some problems with the burden of proof at different stages, and it was very difficult to understand exactly what the district court was alluding to. A lot of references were made to court decisions outside the circuit. So as a short answer to Judge Graber's question, you don't know what it means at that passage? No, Your Honor. Okay. Now, to follow up a bit on the point that I think Judge Wallace started to make, and that's did you raise it in front of the district court, assuming hypothetically that you did, you didn't seem to raise it in your opening brief here. Is that right? Did you raise this issue in your opening brief? Yes, Your Honor. And I'll have to give you that on rebuttal. Okay. You've got about three minutes left, Your Honor. Yes, I do. Thank you. Good morning. I'm pleased to be here before the court and to see my honorable colleague again. My name is Sarah Ryan, representing the Commissioner of Social Security. If I may respond briefly to the court's questions, I believe at 357 the district court was referring to the note of Dr. Geller on page 178 of the excerpt of record, dated September 22, 2003, where the plaintiff reported that following the removal of the screw in his heel, he had a decrease in pain. So that note of September 22, 2003, was one of the reasons the district court sustained the ALJ's finding of a cessation of disability on October 30, 2003. As far as the issue is concerned on the date selected for medical improvement, first, do you think this issue was properly raised before the district court and before us or not? The question of cessation, Your Honor, I believe the medical improvement issue in general, some of the aspects of the medical improvement were not waived. In general, there was a substantial evidence to support, and I believe in general the medical improvement issue was raised, but some of the aspects were not raised. Like setting the date? Excuse me? Like setting the date, was that raised? I believe it was because the district court spoke to that. Well, I ask whether it was raised, not whether the district court spoke to it. Was it an issue raised before the district judge? Your Honor, it must have been because the district court did speak to it. That's all I can say. The question of whether it was properly raised before the district court is another issue that I don't think is before the court at this time. The fact is that the ALJ, the administrative law judge, I beg your pardon, when I say ALJ, that's who I'm referring to. And do you agree that the nine-month trial work period issue was properly raised? No, sir, I do not agree with that. And we did raise the question of waiver of issue with this court, and we do believe that the trial work period is not properly before this court, because it was not properly raised at either the district court level. And then, of course, we point that out to this court. As you have these people that get better at some point, if they're going to get better at some point, they're able to work. And for your purposes, you have to set a specific date, because that's when the payments are going to stop. How did the ALJ go about setting that date? Excuse me. That is, you're on a continuum of improvement. At some point, you can do minimal labor. How does the district ALJ set that point so that you can decide the cutoff? The ALJ cited several things. The ALJ cited the fact that in September, the plaintiff recited that he had less pain once the screw was removed from his heel. He also cited the fact that the plaintiff went back to work on November 15th, just two weeks after the date the ALJ cut off the disability. And he also recited the fact that the consultative examiner, Dr. McPhee, in February, also pointed out the fact that the plaintiff was not disabled and went back to work in November of 2003. So what the ALJ does is take some sort of an estimate date, and then we test whether that estimate date is correct based upon the substantial evidence that's before the ALJ. Well, in Magellanes, this Court said that you could use the totality of the ALJ's opinion and make logical inferences that flow from the evidence. In McCree, this Court said that you could use or the ALJ could use common sense, and that is exactly what the ALJ did. The ALJ wanted to give the plaintiff a period of disability, because the ALJ found that the plaintiff's residual functional capacity, or RFC, was the same in both periods of time, during that one-year period and then following October 30th, 2003, with one exception. And that one exception was that during that one-year period, he would be off work for four days or more. That was the sole difference in the RFC in that one-year period and then afterwards. But is it true that in the record there is nothing in the medical record that supports the specific date? There is nothing that occurred. There's no discrete event that occurred to support that. There's no medical doctor that says this date he could go to work and do this. That's correct. There is one document that the plaintiff filled out, and I believe that's, if you'll excuse me, that's at page 55 of the excerpt of record, where the plaintiff says that he has not recovered satisfactorily and cannot return to work before 10-31-03. Now, I don't know what inference you can make of that, and the ALJ did not cite to that document. So there is a two-week gap between the time the plaintiff went back to work in November 15th and the date the ALJ chose. So if the court chose to extend the cessation date to November 15th, there would certainly be evidence to support the court's reforming of the ALJ's decision. Well, I'm not sure whether we have the authority to do that or not, but could I ask you maybe a more theoretical question about this point? There's a Social Security ruling, 83-20, which deals with the onset of disability and gives some guidance on what kind of evidence is required to support the selection of a date of onset of disability. Is it your position that by analogy that applies to a cessation of disability, also those same kinds of standards, or that it does not, or something else? It's a substantial evidence standard. Well, there's a ruling that gives ALJ's guidance on how to pick an onset date. Would that guidance logically apply similarly to the cessation date or not? Well, the standard here is the medical improvement standard, whether or not there has been an improvement that relates to the ability to work. And for that, the ALJ looked and saw that the plaintiff went back to work, in fact. Now, granted, he went back to work at his former level of heavy exertion, and the ALJ said the plaintiff couldn't do heavy exertion. He said he can do sedentary work, but he can't do heavy work. I think Judge Graber is asking a bit of a different question. Yes. Four doors from the facts of this case. Just as a matter of process down at the administrative law level, what standards ought the ALJ to employ in determining cessation of disability? There is no ruling to my knowledge that requires him to seek a medical expert such as in 8320. If that is ‑‑ if that answers your question, Your Honor, the standard that's set forth in the regulation is the medical improvement standard that it has to relate to the ability to work. And I'm not sure if I'm answering the question or not. In the substantial evidence standard, the administrative law judge looked at the fact that he did indeed go back to work, albeit at the heavy level. And the claimant actually told Dr. McPhee, the consultative examiner, that his feet didn't start hurting him until after two hours of being on his feet lifting 50 pounds. Well, that is evidence of the ability to work at the sedentary level, because sedentary level doesn't require that you work until ‑‑ it doesn't require that you be on your feet more than two hours total in an eight‑hour day. I see that my time is up, and I thank the Court for its attention. Thank you, Counsel. Thank you, Your Honor. Your Honor, in response to your early inquiry as to where that was cited, it would be on page 33 of the opening brief to this Court. Page 33. Yes, Your Honor.   That was my question. Judge Wallace's question was where you raised it before the district court. I'll have to get that particular one. I may not have raised that particular point at the district court level. I think I expanded upon the closing date when I was looking at the medical improvement review standard and how the ALJ applied that standard in choosing the ending date. Because when he terminated his benefits, the medical improvement review standard shifts the allocation of proof. Now the government bears the burden to ‑‑ they have a heightened duty to look at everything a lot more carefully, because now Ralston is entitled to benefits, and that is substantially different than when you are first trying to apply for disability. I would suggest to this Court that in this particular case, what's really unique is the work activity that caused the cessation. I think that trial work period applied to that two‑month time when Ralston was trying to work. And I don't think we waived it. It was raised in the opening brief to the commissioner. It wasn't elaborated in great detail, because it's such a statement of law for beneficiaries. Every beneficiary, with very few exceptions, is entitled to a nine‑month trial work period. Genuinely, I never thought I had to develop that issue. That's a fact, nine months trial work period. And once benefits are awarded, he now has greater protections, or at least the commissioner has a heightened duty. And part of the problem in this case was that if that work activity had been looked under the medical improvement review standard, the judge could not hold that work effort against him. The overall policy of the commissioner is to encourage people to go to work. We want them returning to work. And if individuals are discouraged or if you punish a person for trying to work, Ralston should be commended to some degree in the sense that he was doing what he needed to do. And we want that to happen. And I would think that that's the purpose of the trial work period, to encourage individuals to go back to work. And if they're successful, if they're successful, then you terminate benefits. You make a good point, and I think what you're telling us is the finding by the district court otherwise was erroneous. And I think you make a solid argument on that. My question on that line of argument is what does that have to do with post-October 3103? That is, if he made a determination whether or not this was an unsuccessful effort to go back or whether it was substantial gainful activity, why would that make any difference to us as far as the ultimate decision? That is, what is the situation after October 3103? Well, if I'm understanding the question correctly, and this is somewhat confusing even for me, I would suggest that the unsuccessful work attempt SGA issue is really a non-issue. It's really a non-issue. If he's entitled to a trial work period, then why are we looking at SGA, unsuccessful work attempt, or any of those provisions? For me, it's fairly simple. You're entitled to benefits, you do your 12 months of duration, he's entitled now. He goes from being a claimant to a beneficiary. Once you're a beneficiary, the burden shifts. It's the government's responsibility to demonstrate medical improvement, and that standard is pretty clear in the regulations. And this is where I think the district court erred and the commissioner erred in its final analysis. If indeed the medical improvement standard applies, then any work after that, once he's found disabled, is part of a trial work period. Now, it would be a different situation if Ralston had finished 10 months of work. The administrative law judge would have been absolutely correct in seizing benefits due to SGA because he completed his trial work period, and that is consistent with the overall policy to encourage people to get back to work. I see I've used up my time. And I know that there are many other issues that both of you would like to raise, but we appreciate you addressing the questions that we had, and we know that you've briefed the other ones adequately for our consideration. The case history will be submitted. The next case on the oral argument calendar is American Broadcasting Companies v. Heller. This one didn't pass the SMART test, so now it looks like it has coughed and sputtered.
judges: Wallace, Thomas, Graber